**Cynthia S. Butera (CSB-2078)**
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**
1133 Westchester Ave.
White Plains, New York 10604

**Attorneys for Plaintiff**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **STEPHENS INC.** | _____Civ. No. _____ |
| **Plaintiff,** | |
| v. | **COMPLAINT** |
| **FLEXITI FINANCIAL INC.** | |
| **Defendant.** | |

**COMPLAINT**

Plaintiff Stephens Inc. ("Stephens" or "Plaintiff"), by its undersigned attorneys, brings this Complaint against defendant Flexiti Financial, Inc. ("Flexiti" or "Defendant"), and alleges as follows:

**PARTIES**

1. Stephens is an Arkansas corporation with its principal place of business in Little Rock, Arkansas. Stephens provides financial services to businesses, state and local governments, institutions, and individuals.

2. Flexiti is a Canadian corporation with its principal place of business in Toronto, Ontario.

7217501v.1

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action because the amount in controversy exceeds $75,000, exclusive of interest and costs, and it is between Stephens, a United States citizen, and Flexiti, a Canadian citizen. 28 U.S.C. § 1332(a)(2).

4. Venue is proper because a substantial part of the events giving rise to the claim occurred in the Southern District of New York. *See* 28 U.S.C. § 1391(b). Furthermore, venue is appropriate based on the choice of law provision agreed to by the parties.

5. This Court has personal jurisdiction over Flexiti. N.Y. C.P.L.R. § 302(a)(1).

**FACTUAL BACKGROUND**

6. In 2016, Flexiti contacted Stephens about engaging Stephens to help Flexiti raise capital. Stephens did not accept the engagement but continued to communicate with Flexiti and to field calls and e-mails from Flexiti.

7. In 2017, Flexiti contacted Stephens regarding Flexiti's potential acquisition of a private label Canadian credit card portfolio (the "Transaction").

8. Flexiti wished to retain Stephens to act as a financial advisor to assist Flexiti with some of its strategies and negotiations to acquire the portfolio and execute the Transaction.

9. After a series of electronic communications and negotiations, Flexiti and Stephens entered into an engagement letter agreement on May 31, 2017. A true and correct copy of the engagement letter is attached and incorporated as Exhibit A (the "Contract").

10. Peter Kalen, Flexiti's Chief Executive Officer, signed the Contract on behalf of Flexiti.

11. Under the Contract, Stephens agreed, if requested by Flexiti, to provide certain financial advisory services related to the Transaction, including, among others: (1) assisting in structuring the Transaction; (2) formulating negotiation strategies; (3) identifying and contacting financing sources; and (4) analyzing and advising on the financial implications of financing offers. *See* Exhibit A, Contract, at 1.

12. Flexiti agreed to pay Stephens a success fee equal to $2.7 million USD if the Transaction closed.  *See* Exhibit A, Contract, at 1-2.

13. Flexiti agreed to pay the Success Fee on the Transaction closing date.  *See* Exhibit A, Contract, at 2.

14. Flexiti also agreed to reimburse Stephens upon request for any out of pocket expenses incurred in connection with the engagement regardless of whether the Transaction closed.  *See* Exhibit A, Contract, at 2.

15. Flexiti and Stephens agreed that, while either party could terminate the engagement at any time, the compensation and expense reimbursement provisions of the Contract, as well as the provisions of the attached indemnification rider, would survive the termination of the agreement.  *See* Exhibit A, Contract, at 1.

16. Flexiti and Stephens also agreed that the Contract would be governed and construed in accordance with New York law.  Exhibit A, Contract, at 3.

17. After receiving the signed Contract from Flexiti, Stephens assisted Flexiti with its bidding strategies and negotiating strategies.

18. Stephens also assisted Flexiti with identifying and contacting potential financing sources.

19. Within days of engagement, Stephens contacted numerous financial institutions in New York City regarding their potential financing of the Transaction.

20. Stephens soon began hosting conference calls to facilitate discussions between Flexiti's management team and some of these prospective financers operating out of offices in New York that appeared interested in potentially providing financing for the Transaction.

21. Stephens hosted approximately 78 calls with financial institutions over the course of its engagement, and executives of Flexiti participated on a majority of these calls.

22. After preliminary negotiations, Stephens and Flexiti scheduled in-person meetings with four potential lenders in New York City.

23. On July 12, 2017, Bryan Pyne, a Vice President at Stephens, traveled to New York City for these lender meetings.

24. Mr. Pyne and Sean Milne, Flexiti's Vice President of Finance, worked late into the night preparing for the meetings.

25. Throughout the following day, Mr. Pyne, Mr. Milne, and Flexiti's CEO Peter Kalen met with the potential lenders at their respective offices in Manhattan.  Each meeting lasted approximately an hour and a half.

26. Following these in-person meetings, Stephens continued its discussions on behalf of Flexiti with potential lenders located in New York City.

27. Using advice provided by Stephens and strategies developed with the assistance of Stephens, Flexiti secured exclusivity with the seller in the Transaction.

28. After talks intensified with one bank, operating through its New York City office, regarding the potential debt financing for the Transaction, Nick Bellmann, a Managing Director at Stephens, attended a meeting on December 7, 2017 at the bank's offices in Manhattan.

29. Mr. Milne and Bill Russell, Flexiti's Head of Corporate Development, traveled to New York City to participate in this meeting.

30. Mr. Kalen was also in New York on the same day on behalf of Flexiti for meetings related to another portion of the Transaction financing and participated in the bank meeting by conference call.

31. After that in-person meeting, Stephens continued working with the bank, through its New York City office, regarding financing for the Transaction.

32. On February 12, 2018, the bank executed a commitment letter to provide financing for the Transaction.

33. However, on April 26, 2018, discussions regarding the proposed financing with that bank were terminated, and Flexiti and the bank, operating out of its New York City offices, executed a mutual release related to the Transaction and Transaction financing.

34. After that financing proposal was terminated, Flexiti contacted another bank at its New York City office with which Stephens had previously engaged in discussions on behalf of Flexiti regarding the financing of the Transaction and to which Stephens had previously provided a proposed term sheet.

35. On June 7, 2018, Flexiti announced its closing of the Transaction effective the same date.

36. That day, Stephens sent Flexiti an invoice for its expenses and the success fee, totaling $2,711,100.82.  A true and correct copy of the Invoice is attached and incorporated as Exhibit B.

37. On June 8, 2018, Flexiti sent Stephens a letter refusing to pay the invoice and threatening litigation.

## COUNT I – BREACH OF CONTRACT

38. Stephens restates and incorporates by reference Paragraphs 1 –37.

39. Stephens and Flexiti entered a written contract on May 31, 2017. *See* Exhibit A, Contract.

40. Stephens performed its obligations under the contract, without limitation, by, assisting Flexiti in structuring the Transaction and formulating negotiation strategies, assisting Flexiti with its bidding strategies and negotiating strategies to win the Transaction, assisting Flexiti with identifying and contacting potential financing sources, analyzing and advising on the financial implications of financing offers, conducting due diligence, and participating in negotiations and discussions with potential lenders.

41. Stephens incurred $11,100.82 in expenses related to its work under the Contract. *See* Exhibit B, Invoice.

42. The Transaction closed on June 7, 2018.

43. Under the terms of the Contract, Flexiti was obligated to pay Stephens a $2.7 million Success Fee and reimburse Stephens for all expenses incurred in connection with the engagement.

44. Flexiti breached the parties' contract by refusing to pay the Success Fee or reimburse any expenses.

45. Stephens has been damaged as a result of Flexiti's breach.

46. Stephens is entitled to recover $2,711,100.82 for its expenses and the success fee.

47. Stephens is also entitled, under the terms of the Contract, to attorney's fees and other expenses related to bringing this action. *See* Exhibit A, Contract, at 5.

48. Stephens is entitled to pre-judgment and post-judgment interest at the maximum rate allowed by law.

WHEREFORE, Stephens Inc. prays that the Court enter judgment in its favor and against Flexiti Financial, Inc. for compensatory damages, attorneys' fees, costs, pre-judgment, and post-judgment interest, and all other relief to which it is entitled.

Dated: White Plains, New York
September 7, 2018

>WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
>
>__/s Cynthia S. Butera_____
>*Attorneys for Plaintiff Stephens Inc.*
>Cynthia S. Butera (CSB 2078)
>1133 Westchester Avenue
>White Plains, New York 10604
>(914) 323-7000
>(914) 323-7001
>cynthia.butera@wilsonelser.com