# Exhibit A

# Stephens

May 30, 2017

Peter Kalen
Chief Executive Officer
Flexiti Financial Inc.
85 Richmond Street West, Suite 800
Toronto, ON M5H 2C9

Dear Peter:

This letter sets forth the terms of engagement of Stephens Inc. ("Stephens") to act as financial advisor to Flexiti Financial Inc. (the "Company") in connection with the proposed acquisition by the Company of a private label Canadian credit card portfolio of TD Financing Services, Inc. (the "Transaction"). For purposes of this engagement, the term "Transaction" shall include any transaction involving the Company or any of its affiliates, whether by way of a purchase, direct or indirect, of assets, stock, merger, consolidation, reorganization, business combination, lease, exchange, joint venture or other transaction in which all or a significant portion of the assets, securities, or other equity of such portfolio is transferred to the Company or its affiliates, whether effected, in any such case, in one transaction or a series of transactions. The terms of any Transaction will be subject to the Company's approval, and Stephens is not authorized to make any agreement or commitment on behalf of the Company.

In connection with the Transaction, if requested, Stephens will provide the following services:

- assisting the Company in structuring the Transaction and analyzing the financial implications;
- formulating negotiation strategies and conducting negotiations;
- preparing and making presentations to the Company's Board of Directors;
- assisting Company counsel with developing agreements in principle and definitive agreements, as appropriate;
- identifying and contacting potential financing sources;
- analyzing and advising on financial implications of financing offers;
- assisting the Company with due diligence, negotiations and discussions with prospective lenders regarding the terms of the financing;
- and in such other matters as may be agreed upon from time to time by Stephens and the Company.

Our engagement hereunder may be terminated any time, by either Stephens or the Company upon thirty (30) days' prior written notice thereof to the other party; provided, however, that the provisions of the indemnification rider attached as Exhibit A and the compensation and expense reimbursement provisions of this agreement will survive any expiration or termination of this engagement agreement.

In consideration of the services to be rendered by Stephens pursuant to this agreement, the Company agrees to pay Stephens a success fee if a Transaction is closed during Stephens'

**EXHIBIT A**

24483921.2

Flexiti Financial Inc.
May 30, 2017
Page 2 of 7

engagement hereunder or if the Company or any of its affiliates enters into an agreement during Stephens' engagement hereunder or within eighteen (18) months after the termination of Stephens' engagement hereunder providing for a Transaction, and such Transaction is subsequently consummated. The amount of the success fee shall be equal to USD$2,700,000. The success fee shall be paid to Stephens on the closing date of the Transaction.

In addition to the fees set forth herein (and regardless of whether a Transaction occurs), the Company shall reimburse Stephens, upon request, for Stephens' out-of-pocket expenses incurred in connection with this engagement, including, but not limited to, travel expenses, database fees, overnight delivery and courier fees, and the reasonable fees and disbursements of outside counsel, which out-of-pocket expenses shall not exceed $35,000 without the prior consent of the Company.

The Company will furnish Stephens (and will request the target company to furnish Stephens) with such information requested by Stephens as Stephens believes appropriate to its assignment. The Company recognizes and confirms that, in performing the services contemplated by this letter, Stephens: (i) will use and rely primarily on the information provided by the Company and the target company and on information available from public sources, which may include information available through subscription services (collectively, the "Information"); (ii) does not assume responsibility for the reliability, accuracy or completeness of the Information and does not undertake to independently verify the Information; (iii) will not perform any audit (financial or otherwise) or forensic accounting services; (iv) will not make an appraisal of any assets or liabilities of the Company or of any potential transaction counterparties or otherwise assess the solvency for bankruptcy law purposes of the Company or of any potential transaction counterparties; and (v) with respect to any financial forecasts (including cost savings) that may be furnished to or discussed with Stephens by the Company or any other person in connection with any proposed transaction, will assume that such forecasts have been reasonably prepared and reflect the best then currently available estimates and judgment of the Company's or such other person's management. The Company hereby warrants that any Information relating to the Company that is furnished to Stephens by or on behalf of the Company will be fair, accurate and complete in all material respects and will not contain any material omissions or misstatements of fact. The Company will promptly advise Stephens if any Information previously provided becomes inaccurate or is required to be updated.

Please note that in the ordinary course of business, Stephens and its affiliates at any time may hold long or short positions, and may trade or otherwise effect transactions as principal or for the accounts of customers, in debt or equity securities or options on securities of the Company or any potential participant in a Transaction. The Company recognizes and consents that (i) Stephens acts, and may act, as a finder, placement agent, underwriter, financial adviser, investment banker, investor, lender or in other capacities for other persons who wish to raise equity or debt capital or to buy, sell or finance businesses, make investments or engage in other transactions, and Stephens contacts, and may contact, the same potential investors or transaction counterparties on behalf of multiple persons, (ii) Stephens shall have no obligation to disclose any of such interests, transactions, activities or financial services and (iii) potential conflicts of interest arise for Stephens, or may arise, as a result of such other activities and relationships; however, Stephens will not serve as an investment banker for any participant other than the Company or its affiliates in connection with the proposed sale by TD Financing Services, Inc. of a Canadian private label credit card portfolio to the Company.

The Company agrees to indemnify and hold Stephens harmless in accordance with the indemnification rider attached hereto as Exhibit A. This agreement, including the indemnification

24483921.2

Flexiti Financial Inc.
May 30, 2017
Page 3 of 7

rider, incorporates the entire understanding of the parties with respect to this engagement and supersedes all previous agreements, should they exist, and shall be governed by and construed in accordance with the laws of the United States of America and the State of New York, without reference to principles of conflicts of laws and all fees, expense reimbursements and other financial obligations of the Company to Stephens shall be paid in United States Dollars.

The Company and Stephens further agree that any other provisions of this letter agreement notwithstanding, the Company will cooperate with Stephens to conduct the engagement contemplated by this letter agreement in accordance with applicable securities laws and regulations, including (but not limited to) the applicable securities laws and regulations of the U.S. and Canada and its respective provinces, and, in particular, in the event that it appears advantageous for the Company to pursue a sale or placement of its securities to Canadian investors in connection with any transactions contemplated herein, the Company and Stephens will cooperate with each other to associate one or more broker-dealer firms fully licensed in one or more provinces of Canada to conduct those aspects of any transaction involving a pursuit of any sale or placement of the Company's securities to Canadian investors in compliance with applicable law and regulation. The Company and Stephens acknowledge and agree that nothing in the immediately preceding sentence is intended to create any obligation for the Company to include Stephens as a participant in any transaction.

If requested by Stephens, the Company shall include a mutually acceptable reference to Stephens in any press release or other public announcement made by the Company regarding the matters described in this letter.

If the Transaction is completed and becomes a matter of public record, Stephens shall be entitled, at its expense, to place announcements, which may include the Company's corporate logo, in such newspapers and other media as it may choose stating that Stephens acted as financial advisor to the Company in the Transaction.

This agreement has been and is made solely for the benefit of Stephens, the Company, and of the persons, agents, employees, officers, directors and controlling persons referred to in the indemnification rider and their respective successors, assigns and heirs, and no other person shall acquire or have any right under or by virtue of this agreement. Stephens shall act as an independent contractor and shall be deemed not to be a fiduciary under this engagement agreement. Any duties arising out of Stephens' engagement hereunder shall be owed solely to the Company. The Company acknowledges and agrees that Stephens is not being retained to advise the Company on, or to express any opinions as to, the wisdom, desirability or prudence of pursuing or consummating a Transaction or to provide any legal, regulatory, accounting or tax advice. The Company confirms that it will rely on its own counsel, accountants and other advisors for legal, regulatory, accounting, tax and other similar advice.

Flexiti Financial Inc.
May 30, 2017
Page 4 of 7

    If this letter correctly states our agreement, please so indicate by signing below and returning a signed copy to us. Upon receipt of a signed copy of this letter, the terms of such letter shall constitute a binding agreement between Stephens and the Company. We look forward to working with you toward successful completion of a Transaction.

Very truly yours,

**STEPHENS INC.**

By: _____
R. Bruce Miller
Managing Director


ACCEPTED THIS __31__ DAY OF MAY, 2017.

**FLEXITI FINANCIAL INC.**

By: _____
Peter Kalen
Chief Executive Officer

Flexiti Financial Inc.
May 30, 2017
Page 5 of 7

## EXHIBIT A

## INDEMNIFICATION AND CONTRIBUTION

(a)     The Company will indemnify and hold harmless Stephens Inc. ("Stephens") and its affiliates, and their respective officers, directors, advisors, representatives, agents, employees, and each other person controlling Stephens or any of its affiliates within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended (each such party, including Stephens, an "Indemnified Person"), from and against any and all losses (other than loss of profits), claims, damages and liabilities, joint or several (collectively, "Damages"), related to or arising out of any matter referred to in the engagement letter to which this Exhibit is appended (the "Agreement"), including an Indemnified Person's services thereunder, except to the extent such Damages are finally, judicially determined to have resulted directly from the gross negligence or willful misconduct of an Indemnified Person.

(b)     The Company will also reimburse each Indemnified Person immediately upon request for all expenses (including without limitation reasonable fees and disbursements of legal counsel, and usual and customary expenses for an Indemnified Person's involvement in discovery proceedings or testimony) incurred in connection with any threatened or commenced inquiry, investigation, action or legal, administrative or judicial proceeding (collectively, "Proceedings"), related to or arising out of any matter referred to in the Agreement, including an Indemnified Person's services thereunder. The reimbursement obligations contained herein shall apply whether or not Stephens or any other Indemnified Person is a formal party to any Proceeding and are intended to cover, among other things, reimbursement of expenses incurred for reviewing, investigating or responding to, or otherwise in connection with, any claims, demands, allegations, discovery requests, depositions, investigative testimony, hearings, arbitrations, trials, appeals or other proceedings related to or arising out of any matter referred to in the Agreement, including an Indemnified Person's services thereunder. In the event that any expenses reimbursed under this paragraph are finally, judicially determined to have resulted directly from such Indemnified Person's gross negligence or willful misconduct in performing the services which are the subject of the Agreement, Stephens shall promptly refund to the Company the portion of amounts advanced under this Exhibit in respect of reimbursement of expenses which is attributable to expenses incurred in relation to the act or omission of such Indemnified Person who is the subject of such determination.

(c)     The Company and Stephens agree that if, for any reason, any indemnification or reimbursement sought pursuant to this Exhibit is unavailable or is insufficient to hold any Indemnified Person harmless as and to the extent provided in this Exhibit, then, whether or not Stephens is the person entitled to indemnification, the Company and Stephens shall each contribute to amounts paid or payable by the Indemnified Person in respect of the Damages and expenses (including all legal and other fees and expenses incurred in defending any action or claim) for which such indemnification or reimbursement is unavailable or insufficient, in such proportion as is appropriate (i) to reflect the relative benefits received (or anticipated to be received) by the Company and its stockholders, on the one hand, and Stephens, on the other, in connection with the transaction(s) contemplated in the Agreement and (ii) if the allocation on that basis is not permitted by applicable law, to reflect not only the relative benefits referred to in clause (i) above but also such parties' relative fault in connection with the matters as to which such Damages relate, as well as any relevant equitable considerations; provided that in no event shall the amount to be contributed by Stephens exceed the amount of fees actually received by Stephens under the Agreement (excluding

any amounts received by Stephens as reimbursement of expenses). It is hereby agreed that the relative benefits to the Company and its stockholders, on the one hand, and Stephens, on the other hand, with respect to the Agreement shall be deemed to be in the same proportion as (x) the total value paid, transferred, exchanged or received or proposed to be paid, transferred, exchanged or received by the Company or its stockholders, as the case may be, in connection with any transaction (whether or not consummated) bears to (y) the fee(s) paid or payable to Stephens in connection with the Agreement. The Company and Stephens agree that it would not be just and equitable if contribution pursuant to this paragraph (c) were determined by pro rata allocation or by any other method which does not take into account the equitable considerations and other criteria referred to in this paragraph.

(d) The Company also agrees that no Indemnified Person shall have any liability to the Company for or in connection with the Agreement, except for liability for Damages which are finally, judicially determined to have resulted directly from the gross negligence or willful misconduct of the Indemnified Person. In no event shall any Indemnified Person be responsible for any indirect, punitive, special or consequential damages, even if the Indemnified Person is advised of the possibility thereof.

(e) The Company will promptly notify an Indemnified Person of the assertion against the Indemnified Person or any other person of any claim or the commencement of any inquiry, investigation, action or proceeding, of which the Company has knowledge, relating to or arising out of any matter referred to in the Agreement, including an Indemnified Person's services under the Agreement. Promptly after receipt of notice of the commencement of any legal proceeding against the Indemnified Person or after receipt of notice of the commencement of any investigation, which is based, directly or indirectly, upon any matter in respect of which indemnification may be sought from the Company, the Indemnified Person will notify the Company in writing of the commencement thereof and, throughout the course thereof, will provide copies of all relevant documentation to the Comapny, will keep the Company advised of the progress thereof and will discuss with the Company all significant actions proposed. The omission to notify the Indemnitor shall not relieve the Company of any liability which the Company may have to the Indemnified Person, except only to the extent any such delay in giving or failure to give notice as herein required materially prejudices the defence of such action, suit, proceeding, claim or investigation.

(f) The Company and Stephens agree to consult in advance with one another with respect to the terms of any proposed waiver, release or settlement of any Proceeding to which the Company or an Indemnified Person may be subject as a result of the matters contemplated by the Agreement and further agree not to enter into any such waiver, release or settlement without the prior written consent of one another (which consent shall not be unreasonably withheld), unless such waiver, release or settlement includes an unconditional release of the Company or such Indemnified Person, as the case may be, from all liability arising out of such Proceeding.

(g) The agreements of the Company under this Exhibit shall be in addition to any liabilities or obligations the Company may have under the Agreement or otherwise, shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company or any Indemnified Person, and shall apply whether or not Stephens or any other Indemnified Person is a formal party to any Proceeding.

Flexiti Financial Inc.
May 30, 2017
Page 7 of 7

    (h)    Any right to trial by jury with respect to any dispute as to the respective rights and obligations of the Company and any Indemnified Person is hereby waived.

    (i)    The provisions set forth in this Exhibit shall apply to any modification or extension of the Agreement, and shall remain in full force and effect following the termination of the Agreement, whether as a result of the completion of services or otherwise.

Flexiti Financial Inc.
May 30, 2017

24483921.2